FOR THE RESPONDENT FOR THE INDIANA SUPREME COURT

DISCIPLINARY COMMISSION 

Ronald E. Elberger Donald R. Lundberg, Executive Secretary

Bose McKinney and Evans Charles M. Kidd, Staff Attorney

135 North Pennsylvania St.
 
 115 West Washington Street, Ste. 1060

Indianapolis, IN 46204 Indianapolis, IN 46204

____________________________________________________________________________

IN THE

SUPREME COURT OF INDIANA

IN THE MATTER OF ) 

) Case No. 49S00-8905-DI-386

JAMES R. FISHER )

________________________________________________________________________

DISCIPLINARY ACTION 

________________________________________________________________________

Per Curiam

The hearing officer in this case found that the respondent, James R. Fisher, knowingly and in violation of the 
Code of Professional Responsibility
 altered a legal document after it had been signed and notarized by an opposing party.
(footnote: 1)   Neither the respondent nor the Commission has petitioned this Court for review of the hearing officer’s findings.  Accordingly, this matter is now before this Court for final resolution.  

The respondent is an attorney in good standing, admitted to the bar of this Court in 1972.   Since that time, he has practiced law continuously with the Indianapolis law firm of Ice Miller Donadio & Ryan.  His admission to this state’s bar confers disciplinary jurisdiction. 

We now find that in 1984, the respondent represented several defendants in a civil case pending in Hendricks Circuit Court.  Concomitant with the civil case was an ongoing FBI investigation regarding alleged criminal activity of one of the civil defendants.  During the course of the civil proceedings, the respondent learned information which reasonably caused him to believe that the FBI was actively collaborating with the civil plaintiffs in connection with the civil case.  The respondent also believed the FBI might have been sponsoring the litigation to obtain discovery regarding the defendant’s activities which otherwise could not be obtained in the criminal investigation because of Fifth Amendment considerations.
(footnote: 2)   Based on that belief, on December 31, 1984, the respondent filed a countersuit on behalf of his civil clients for abuse of process.   

The respondent’s subsequent attempts at discovering evidence pertaining to any relationship between the plaintiffs and the FBI were largely unsuccessful.  The plaintiffs moved for summary judgment in the countersuit, contending that they had no relationship with the FBI.  The respondent asked the trial court to stay ruling on the motion for summary judgment until he completed discovery on the counterclaim, which he pursued by invoking the Freedom of Information Act (hereinafter “FOIA”).  To that end, the respondent filed a
 Motion to Strike Affidavit
 [in support of the motion for summary judgment] 
and to Compel Discovery
 on May 22, 1985.  The motion requested that the plaintiffs execute FOIA forms attached to the motion.  Specifically, the FOIA forms required the plaintiffs to authorize release of all information relating to them contained in the FBI’s files.  The trial court granted the motion on May 24, 1985, and denied the plaintiffs’ motion for summary judgment.  The court ordered the plaintiffs to provide the requested discovery by executing and tendering the FOIA forms no later than June 15, 1985.  

The plaintiffs contested the court’s rulings, filing an objection to the respondent’s discovery requests.  The trial court overruled the motions and denied the plaintiffs’ subsequent motions to reconsider.  During the first weeks of June 1985, the plaintiffs continued to resist and did not sign the FOIA forms.   After a status conference on June 28, 1985, the trial court granted another request for an order to compel the plaintiffs to execute the FOIA forms, this time directing that the forms be completed by August 15, 1985.  On July 15, 1985, the respondent sent a second identical set of forms to the plaintiffs.  

On July 19, 1985, the respondent received from the plaintiffs the completed FOIA forms.   However, the forms had been altered by the plaintiffs from the wording originally approved by the trial court.  The plaintiffs did not disclose the alteration to the respondent.  As prepared by the respondent, the original forms requested “all information relating to the below named individual.”   The altered forms stated that they contained “all information relating to the below named individual 
with respect to the allegations against him contained in the attached Counterclaim filed with the Hendricks County Circuit Court of Indiana in [the civil case].”
 (Emphasis added).  Each altered form was signed by the plaintiffs and notarized.   Prior to returning the executed forms, the plaintiffs did not object to the language contained therein.   The respondent noticed the alteration and directed a paralegal to remove the altered language from the forms, returning them to their original wording.   The re-altered forms were submitted to the FBI on August 9, 1985, but due to the obvious tampering, the FBI refused to honor them.  

The respondent persisted in his efforts to have the court-ordered FOIA forms executed.   On September 10, 1985, he sent yet another set of forms to plaintiffs, which they refused to sign.   On September 22, 1986, the trial court issued its fourth order requiring the plaintiffs to sign the FOIA forms.  They ultimately complied,  but once again returned forms which had been altered.  Following more legal machinations, it became clear that the plaintiffs would not furnish the requested discovery and that the defendants would not abandon efforts to obtain the material.  The lawsuit was eventually terminated on agreement that the case would be dismissed with prejudice and not refiled in a new or similar action in exchange for the defendants’ agreement to stop seeking information regarding the plaintiffs possible affiliation with the FBI. 

We find that by intentionally altering documents to be used in a legal proceeding after they were signed and notarized by an opposing party, the respondent violated Disciplinary Rule 1-102(A) (4), (5), and (6), which provides that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation, that is prejducial to the administration of justice, and that adversely reflects on his fitness to practice law.
(footnote: 3)   We also find that the respondent’s actions violated D.R. 7-102 because he failed to represent a client within the bounds of the law. 

Having found misconduct, we now turn to the issue of proper sanction. The hearing officer found the respondent’s alteration was an isolated occurance, that he demonstrated an awareness and understanding of the nature of his error, and that he is not a continuing threat to the public or profession.  He recommended a “minimal sanction.”  

 We are not bound by the hearing officer’s recommendation and are unconvinced that a minimal sanction is adequate for misconduct that was preconceived and which involved an element of fraud and deceit.   Admittedly, the respondent was faced with persistent   opposition to his efforts to obtain court-ordered discovery.  Additionally, he suspected covert FBI influence.   However, after becoming the victim of the plaintiffs’ tactics, the respondent ultimately chose simply to return the favor.
   That response was unethical despite the unfortunate circumstances.  
Lawyers are obligated to adhere to ethical strictures regardless of perceived transgressions of other participants in litigation. 
See, e.g. In re Atanga
, 636 N.E.2d 1253 (Ind. 1994) (lawyer found to have knowingly disobeyed an obligation of a tribunal in violation of the 
Rules of Professional Conduct
 
despite “troubling” conduct of both the judge and opposing counsel). 

We have generally found that the act of purposefully altering a document in connection with a legal matter in order to gain some advantage is an offense deserving suspension.   
See
 
In re Cholis
, 484 N.E.2d 963 (Ind. 1985) (90 day suspension for altering executed will after testator’s death even though the alteration was requested by the testator’s beneficiary and was to her detriment); 
In re Brown, 
524 N.E.2d 1291 (Ind. 1988) (one year suspension for preparation and submission of false documents in proceeding before Social Security Administration);
(footnote: 4) In re Barratt, 
663 N.E.2d 536 (Ind. 1996) (one year suspension for creating false document to support contention in small claims case and later using document as exculpatory evidence in a disciplinary investigation).  Generally, these cases stand for the proposition that the accuracy of documents and instruments utilized by a tribunal in a proceeding is of the utmost importance to the administration of justice and that fraudulent alteration of such documents by an officer of the court is therefore severe misconduct.   

However, the present case presents some unique circumstances.   The sheer persistence of the plaintiffs’ refusal to execute the forms as ordered by the trial court no doubt provoked in the respondent an uncharacteristic response.   Nevertheless, he should have sought accepted means of combating opposing counsel’s tactics rather than opting to “fight fire with fire.”
(footnote: 5)   The four members of the Court hearing this case have deadlocked with respect to sanction, two favoring some form of reprimand and two favoring suspension.  Accordingly, publication of this opinion and the imposition of costs will constitute the sanction for the respondent’s misconduct. 

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the clerk of the United States Court of Appeals for the Seventh Circuit, the clerk of each of the Federal District Courts in this state, and the clerk of the United States Bankruptcy Court in this state with the last known address of respondent as reflected in the records of the Clerk. 

Shepard, C.J., and Sullivan, J., vote for a period of suspension, as per accompanying opinion by Justice Sullivan, with which Chief Justice Shepard joins. 

Boehm, J., is in general agreement with the points made by Justice Sullivan, but would impose a public reprimand because that was the sanction in an agreed disposition and does not believe it outside the range of reasonable results. 

Dickson, J., would impose a private reprimand. 

Selby, J., not participating. 

Sullivan, Justice, concurring and dissenting. 

While I concur that at least a public reprimand is warranted by the misconduct at issue in this case, I would favor a period of suspension.  

Although I recognize and appreciate the degree of provocation here, the fact remains that the respondent took the law into his own hands.  This a lawyer cannot do.  Indeed, such behavior is the antithesis of lawyering.

For me, the case that makes this point most clearly is 
In re Cholis
, 484 N.E.2d 963 (Ind. 1985).  That case involved two lawyers who had prepared a will for a client.  The will made provisions for the client's daughters from a previous marriage and provided that certain real estate be passed to the client's widow.  However, the will made no provision for the son of the client and his widow.  Upon the death of the client, the widow was  distraught over the son's exclusion.  At the widow's request, the lawyers prepared a new page of the will providing that an interest in the real estate which was to have passed in its entirety to the widow would instead pass to the son.  The lawyers then affixed the deceased's initials to the altered page.

We found mitigating value in the facts that the alteration was (i) made to alleviate the widow's distress over her son's likely reaction at having been rejected or forgotten by his father, and (ii) did not adversely affect the rights of any others.  But we also found that when an attorney appears in court, the court must be able to trust the validity of the instrument offered.  We further concluded that the misconduct was grave because the respondents' failure to honor this obligation raised a genuine question as to their integrity.  We found that they had breached the trust placed in them by their client and our legal profession and suspended both from the practice of law for ninety days.

Here the misconduct is similar to 
Cholis
 but the justification for the alteration is not as benign. 
 Cholis
 teaches that where a lawyer takes the law into the lawyer's own hands and alters a document or instrument, even in the presence of mitigating circumstances, a period of suspension is warranted.

Shepard, C.J., concurs. 

FOOTNOTES
1: The 
Verified 
Complaint for Disciplinary Action
 was filed in this case before the currently-applicable 
Rules of Professional Conduct for Attorneys at Law
 were in effect. 

2: The respondent’s  belief was based, to a substantial extent, upon (1) a privileged communication from his client regarding FBI communications and (2) questions during a civil deposition that were essentially identical to questions asked during a prior grand jury proceeding.

3:  
The current counterpart to D.R. 1-102(A)(4), (5), and (6) is Ind.Professional Conduct Rule 8.4(b), (c), and (d). 

4: 
Upon rehearing, the suspension in that case was reduced to six months in light of the respondent’s inexperience in the practice of law at the time of the misconduct.
  In re Brown
, 529 N.E.2d 1308 (Ind. 1988). 

5: 
For example, the respondent could have moved the trial court for relief pursuant to Ind.Trial Rule 37.